**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| HOKKY TJAHJONO and MILES BLACK, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-531-WSS |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION, d/b/a WABTEC CORPORATION, | |
| Defendant. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

   A.    Summary of Plaintiffs' Allegations and Claims .................................... 2

   B.    Procedural History and Negotiation of the Settlement .......................... 4

III.  THE SETTLEMENT AGREEMENT ............................................................ 5

   A.    Definition of the Class ......................................................................... 5

   B.    Settlement Terms and Benefits ............................................................ 6

      1.    Cash Payments ........................................................................... 6

      2.    Settlement Administration .......................................................... 6

      3.    Notice ......................................................................................... 6

      4.    Exclusion and Objection ............................................................ 8

      5.    Attorney's Fees, Expenses, and Service Awards ......................... 8

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............. 8

   A.    Complexity, Expense, and Likely Duration of the Litigation ............................. 9

   B.    The Stage of the Proceedings and the Amount of Discovery Completed ........................ 10

   C.    Plaintiffs Would Face Real Risks if the Case Proceeded ................................. 11

   D.    Defendant's Ability to Withstand a Greater Judgment .................................... 12

   E.    The Settlement is Fair, Reasonable and Adequate ........................................... 12

   F.    The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate ........................................................ 13

   G.    The Proposed Attorneys' Fees are Reasonable ................................................ 14

V.    THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION ............ 15

A.  The Rule 23(a) Factors Are Met .......................................................................... 15

  1.  The Settlement Class is So Numerous that Joinder is Impracticable........................... 16

  2.  The Claims of the Settlement Class Raise Common Questions of Law and Fact ........ 16

  3.  Plaintiffs' Claims and Defenses are Typical of the Settlement Class........................... 17

  4.  Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class ............... 18

B.  The Settlement Class Satisfies Rule 23(b)(3). ................................................... 20

  1.  Common Questions Predominate ................................................................................. 20

  2.  A Class Action is the Superior Method for Adjudication............................................. 21

VI.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM................. 22

VII. CONCLUSION ..................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ........................................... 19, 25, 27

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ........................................................................................ 23

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ..................................................................................... 24

*Cullen v. Whitman Medical Corp.*,
   197 F.R.D. 136 (E.D. PA. Oct. 3, 2000) ................................................................. 18

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ..................................................................................... 17

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985) ..................................................................................... 21

*Fulton-Green v. Accolade, Inc.*,
   2019 WL 316722 (E.D. Pa. Jan. 24, 2019) ............................................................. 12

*Gates v. Rohm and Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008) ................................................................................ 9

*Gen. Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ........................................ 24

*Girsh v. Jepson*,
   521 F.2d 153 (3d. Cir. 1975) ..................................................................................... 9

*Glaberson v. Comcast Corporation*,
   2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) .......................................................... 16

*Gomes v. Extra Space Storage, Inc.*,
   2017 WL 2999020 (D.N.J. July 13, 2017) ............................................................... 11

*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481 (3d Cir. 2017) ..................................................................................... 19

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
   271 F. App'x 41 (2d Cir. 2008) ................................................................................ 29

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..................................................................................... 10

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ........................................................ 15

*In re DaimlerChrysler AG*,
    2004 WL 7351531 (D. Del. Jan. 28, 2004) ....................................... 12, 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) .............................................................. 10, 19

*In re National Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................. 17

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ................................................................. 19

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ........................................................... 12

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ......................................................... passim

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .......................................................... 11, 15

*In re Wawa, Inc. Data Sec. Litig.*,
    No. 19-cv-6019, 2021 WL 3276148, n.4 (E.D. Pa. July 30, 2021) ............. 13

*Lenahan v. Sears Roebuck & Co.*,
    2006 WL 2085282 (D.N.J. Jul. 24, 2006) ............................................ 15

*Lewis v. Curtis*,
    671 F.2d 779 (3d Cir. 1982) ................................................................. 25

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ........................................................... 20, 21

*McDonough v. Toys R Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. Jan. 21, 2015) ................................... 15, 16

*Moon v. E.I. du Pont de Nemours & Co.*,
    2023 WL 1765565 (D. Del. Feb. 3, 2023) ......................................... 9, 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .......................................................................... 28

*New Directions Treatment Serv's v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007) ................................................................. 25

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ........................................................................... 27

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. 2011) ............................................................. 14

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ........................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................. 20, 22

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984) ...................................................................... 21, 24

## **Rules**

Fed. R. Civ. P. 23 .......................................................................................... passim

## **Other Authorities**

1 Newberg on Class Actions § 3:21 ................................................................... 25

Manual for Complex Litigation (Fourth) (2004) ................................................. 28

Plaintiffs, Hokky Tjahjono and Miles Black (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class, hereby respectfully submit this Unopposed Motion for Preliminary Approval of Settlement and Memorandum of Law in Support and request the Court preliminarily approve a proposed class action Settlement Agreement reached between themselves and Defendant Westinghouse Air Brake Technologies Corporation, d/b/a Wabtec Corporation ("Defendnat" or "Wabtec"). In addition, following the procedures outlined in Fed. R. Civ. P. 23(e), Plaintiffs request that the Court find it likely will be able to certify the Settlement Class, appoint Plaintiffs as Class Representatives, appoint Jamisen A. Etzel of Lynch Carpenter LLP, and Marc E. Dann of DannLaw as Co-Lead Class Counsel ("Class Counsel"). Plaintiffs finally request that the Court approve the Parties' notice plan.[1]

## I.    __INTRODUCTION__

Plaintiffs alleged that on or around March 15, 2022, unauthorized actors introduced malware onto Defendant's systems and accessed certain sensitive information about Plaintiffs and other similarly situated individuals that was stored on Defendant's network (referred to as the "Cyberattack"). On or around December 30, 2022, Defendant began sending notification letters to potentially impacted individuals. Ultimately, approximately 17,757 individuals received notice. Defendant offered these individuals two years of free credit monitoring and identity theft restoration services. SA § I.

Plaintiffs commenced individual class action lawsuits alleging Defendant failed to sufficiently protect their PII/PHI. They ultimately combined their actions and filed a First Amended Class Action Complaint ("FAC") with this Court on June 26, 2023 (ECF No. 13).

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement, attached to the Declaration of Jamisen A. Etzel as Exhibit A (with its respective Exhibits 1–4). All citations to the Settlement Agreement will be abbreviated as "SA, § ___".

After nearly a year of hard-fought litigation, the Parties agreed to a settlement that provides substantial monetary benefits to the Settlement Class. Specifically, the Settlement provides Wabtec will pay monetary relief in the amount of six hundred and twenty-five thousand dollars ($625,000). *See* SA § 2.1. In addition, the Settlement Fund will be used to pay for providing Notice to the Settlement Class, and will pay for the costs of the notice, and the costs of Settlement Administration. *See* SA §§ 2.2, 3.3. The Settlement Fund will also be used to pay for Attorneys' fees, costs, and expenses of Class Counsel, and Service Awards to the Class Representative. *See* SA §§ 2.2, 3.3, 7.2. The net settlement fund will be distributed equally to Settlement Class Members. SA § 2.3. If finally approved by the Court, the Settlement will result in entry of a Final Judgment Order that will terminate all pending claims in the Action. SA § 1.14.

As detailed *infra*, the Settlement falls within the range of final judicial approval and includes a comprehensive notice plan that protects Class Members' due process rights by using the best practicable methods to advise them of their rights to participate in, opt out from, or object to the Settlement. The Defendant does not oppose the relief requested in this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Plaintiffs' Allegations and Claims[2]

Defendant Wabtec employs over 27,000 employees in over 50 countries around the world. FAC ¶ 19. During individuals' course of employment with Wabtec, Defendant receives,

---

[2] This summary is drawn from the Plaintiffs' allegations in the FAC and is provided only for purposes of informing the Court about the allegations and claims at issue. Wabtec denies any and all allegations of wrongdoing, liability, and inadequate security, and disclaims all liability relating to and arising out of the Litigation and the Cyberattack. SA § III.

creates, and handles Personal Identifiable Information ("PII"), such as full names, dates of birth, a variety of governmental identification numbers, medical and health insurance information, photographs, demographic information, salaries, and numerous other points of data. FAC ¶ 20.

On or about December 30, 2022, Wabtec announced that it had been the subject of a ransomware attack that impacted sensitive information contained on the affected computer systems (the "Cyberattack"). FAC ¶ 63.  According to the notice letters Defendant sent to Plaintiffs and the Class, Wabtec detected unusual activity on its network on June 26, 2022, leading to an investigation of the attack and whether the hackers had exfiltrated any data. FAC ¶ 54. Wabtec subsequently discovered that on or about March 15, 2022, cybercriminals had introduced malware into certain Wabtec systems. FAC ¶ 56. On or about November 23, 2022, Wabtec concluded its investigation and determined that certain systems containing personal information were subject to unauthorized access. FAC ¶ 57. Wabtec further determined that personal information contained in the impacted systems was exfiltrated by cybercriminals. *Id.* The information impacted by the Data Breach included a wide swath of PII, including individuals' full names; dates of birth; non-US national ID numbers; non-US social insurance numbers or fiscal codes; passport numbers; IP addresses; Employer Identification Numbers; USCIS or Alien Registration Numbers; medical records and health insurance information; photographs; gender and gender identity; salary; Social Security Numbers; financial account information; payment card information; account usernames and passwords; biometric information; race and ethnicity; criminal convictions and offenses; sexual orientation; religious beliefs; and union affiliation. FAC ¶ 58.

Each Plaintiff filed a class action lawsuit against Defendant, asserting claims for relief emanating from the Cyberattack. These class action lawsuits were combined before this Court by

way of a First Amended Class Action Complaint (ECF No. 13) ("FAC") under the first-filed case *Hokky Tjahjono v. Westinghouse Air Brake Technologies Corporation d/b/a Wabtec Corporation*, Case No. 2:23-cv-00531-WSS. Plaintiffs, through the FAC, alleged causes of action against Defendant for: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; and (vi) declaratory relief. *See, e.g. generally*, FAC ¶¶ 94–137.

### B. Procedural History and Negotiation of the Settlement

Wabtec moved to dismiss on July 17, 2023. (ECF No. 23). The Parties agreed to explore possible resolution and requested a stay, which the Court granted on August 16, 2023. (ECF Nos. 28–29). Thereafter, the Parties exchanged certain materials subject to Rule 408. The Parties conducted a full-day mediation before Bruce A. Friedman, Esq. of JAMS on November 20, 2023.  (Etzel Decl. ¶ 5). Although some progress was made toward resolution at that initial mediation, the Parties did not reach a resolution, and thus requested that the Court lift the stay. (*Id.*, ECF Nos. 32–33).

The Parties completed briefing on Wabtec's 12(b)(6) Motion to Dismiss, which the Court granted in part and denied in part on March 26, 2024 (ECF No. 39). Wabtec answered the Amended Complaint on April 9, 2024 (ECF No. 40), and filed a Motion to Dismiss under Rule 12(b)(1) on April 25, 2024 (ECF No. 42). At the Rule 16 Conference on May 15, 2024, the Court deferred merits discovery and granted the Parties limited jurisdictional discovery to be completed by June 30, 2024 related to Article III standing (ECF No. 49).  The Court also inquired with the Parties about opportunities for alternative dispute resolution, consistent with the Court's Local Rules and practices.

The Parties then initiated limited discovery, with Plaintiffs serving written discovery requests and seeking witness availability from Wabtec for depositions. Etzel Decl. ¶ 6. The

Parties also resumed negotiations regarding a potential resolution of this Action, and conducted a supplemental mediation with Bruce A. Friedman, Esq. of JAMS on June 7, 2024. Etzel Decl. ¶ 7. At that supplemental mediation, with the assistance of Mr. Friedman, the Parties succeeded in reaching an agreement in principle to resolve this Action on a classwide basis, and shortly thereafter executed a confidential term sheet. *Id.*

The Parties informed the Court of their impeding settlement on June 12, 2024, and requested an additional stay to permit them time to draft and finalize a comprehensive agreement and notice plan. (ECF No. 50). Those terms are memorialized in the Settlement Agreement, which the Parties have now finalized and executed.

Plaintiffs and their Counsel believe, in consideration of all the circumstances and after arms-length, supervised settlement negotiations with the Defendant conducted by experienced and knowledgeable counsel on both sides, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members.

## III.    THE SETTLEMENT AGREEMENT

### A.    Definition of the Class

The Parties contemplate certification (for settlement purposes only) of a nationwide class. The Settlement Class comprises approximately 17,757 individuals. SA, § I. The proposed Settlement Class is defined as follows:

> All Persons residing within the United States whose Personal Information [as defined by the applicable state law requiring notice] was potentially compromised in the Cyberattack [that began on or around March 15, 2022].

SA §§ 1.36; *see also* SA §§ 1.10, 1.26. The Settlement Class specifically excludes: (i) Defendant and its respective officers and directors (ii) the Judge(s) to whom the action is assigned and any member of the Judge's staffs or immediate family members; and (iii) any other Person found by

a court of competent jurisdiction to be a guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Cyberattack or who pleads *nolo contendere* to any such charge. SA § 1.36.

### B.    Settlement Terms and Benefits

#### 1.  Cash Payments

Under the Settlement Agreement, all participating Settlement Class Members will receive a cash payment check of their pro-rata share of the Settlement Fund within forty-five (45) after the Effective Date. SA, § 2.3. These checks will remain valid for 180 days, after which remaining funds as a result of uncashed checks shall be re-distributed to Class Members who redeemed or cashed their initial payments if sufficient funds exist to distribute payments of at least $5 to each recipient; otherwise, the residual funds will be donated to the Carnegie Science Center. *Id.*

#### 2.  Settlement Administration

The Parties will engage Verita Global (formerly known as KCC) as Settlement Administrator. Verita is experienced in administering class action claims generally and has extensive experience administering settlements in data breach litigation. (Declaration of Carla Peak, ¶ 5). The Settlement Administrator is to provide notice of the settlement to the Settlement Class and otherwise administer the settlement in accordance with the Settlement Agreement. SA, §§ 3.3, and 8.1–8.4. The costs of settlement administration will be paid from the Settlement Fund. SA, §§ 1.8, 2.2.

#### 3.  Notice

The Notice plan is straightforward and structured to satisfy due process. Within five (5) days after entry of the Preliminary Approval Order, the Defendant will provide a class list to the

Settlement Administrator with the last-known names, addresses, and emails (if any) of the Settlement Class Members. SA, § 3.3(a). Then, within forty-five (45) days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Settlement Administrator will send the Short Notice (attached to the Settlement Agreement as Exhibit 1) to Settlement Class Members by U.S. mail and email, if available. SA § 3.3(d).

In the event a Short Notice is returned to the Settlement Administrator by the USPS as undeliverable and the envelope contains a forwarding address, the Settlement Administrator shall resend the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. SA § 3.3(d)(iii).  In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out Date and Objection Date, a Short Notice is returned to the Settlement Administrator by the USPS as undeliverable and the envelope does not contain a forwarding address, the Settlement Administrator shall perform a skip trace. *Id*. If the skip trace results in the discovery of an ascertainable address for the Class Member, the Settlement Administrator shall resend the Short Form Notice within seven (7) days of receiving such information. SA § 3.3(d)(iv).

In addition to the mail program referenced above, the Parties have agreed that the Settlement Administrator shall publish, on or before the Notice Commencement Date, the Long Notice, and the Settlement Agreement on a Settlement Website. SA § 3.3(c).

The Parties have also agreed that the Notice substantially in the form of the Short Notice shall be published on or before the Notice Commencement Date in a general publication that reaches the entire United States, such as PR Newswire. SA § 3.3(e).

### 4. Exclusion and Objection

Settlement Class Members who do not wish to be included in the Settlement may choose to exclude themselves by submitting a timely written request for exclusion to the Settlement Administrator. SA, § 4.1. The request must be mailed to the Settlement Administrator at the address provided in the Class Notice no later than 60 days after the Notice Commencement Date, or 90 Days after the Order Granting Preliminary Approval. SA § 1.22. Additionally, any Settlement Class Member who does not submit a timely written request for exclusion from the Settlement Class may object to the settlement (no later than 60 days after the Notice Commencement Date) and may appear in person or through counsel, at his or her own expense, at the final approval hearing to present any relevant evidence or argument. SA § 5.1.

### 5. Attorney's Fees, Expenses, and Service Awards

Class Counsel will seek attorney's fees in an amount not to exceed 33.33% of the Settlement Fund and reimbursement of costs and expenses of an amount not to exceed $10,000.00 (subject to Court approval). SA, § 7.1. Class Counsel will seek approval of Service Awards in an amount not to exceed $5,000.00 to each named Plaintiff for their time and effort on behalf of the Settlement Class. SA, § 7.2.

### IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted. *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (A court's decision to preliminarily approve a proposed class action settlement "is a determination that there are no obvious deficiencies and the settlement falls within the range of reason.").

In evaluating the substantive fairness of a class action settlement, courts in the Third

Circuit consider the nine factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d. Cir.

1975).  The *Girsh* factors are:

> (1) the complexity, expense, and likely duration of the litigation, (2) the reaction of
> the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment, (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery, and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Moon v. E.I. du Pont de Nemours & Co.*, 2023 WL 1765565, at *2 (D. Del. Feb. 3, 2023) (Bibas,

J.).  In addition, the Court must consider the following factors under Fed. R. Civ. P. 23(e)(2):

> (A) the class representatives and class counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class,
>> including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of
>> payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

In finding that a settlement is fair, not every factor must weigh in favor of settlement; rather, a

court's decision will be "based on the totality of the factors."  *In re Cendant Corp. Litig.*, 264

F.3d 201, 233 (3d Cir. 2001).  Here, taken together, the *Girsh* factors and Rule 23(e)(2) weigh

heavily in favor of preliminarily approving the proposed Settlement.

### A.    Complexity, Expense, and Likely Duration of the Litigation

"This factor is intended to capture the probable costs, in both time and money, of

continued litigation."  *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability*

*Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (internal quotations omitted).  Courts in this Circuit have consistently found that the resolution of class actions is preferable to the continuation of lengthy and expensive litigation with uncertain results.  *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004).  Here, continuing this case would require significant time and expense.  Remaining steps would likely include: (1) jurisdictional discovery and resumption of the briefing on Defendant's Rule 12(b)(1) motion; (2) merits discovery, including likely engagement of expert witnesses given the technological subject matter involved; (3) Plaintiffs' motion for class certification, which would be contested by Defendant but for the Settlement; (4) summary judgment motion practice; (5) pretrial preparation including *Daubert* motions; and (6) trial. Appellate litigation is also possibility at nearly every stage. Settlement at this juncture thus provides a prompt and inexpensive resolution of this action as compared to these alternatives.

### B.    The Stage of the Proceedings and the Amount of Discovery Completed

This factor assesses whether the parties and plaintiffs' counsel had an adequate appreciation of the merits of the case before negotiating. "Courts can consider how much discovery has taken place and how long litigation in the case has been going for." *Gomes v. Extra Space Storage, Inc.*, 2017 WL 2999020, at *3 (D.N.J. July 13, 2017).  Settlement negotiations not occurring until later in the proceedings indicates that this *Girsh* factor is met. *See, e.g.*, *In re DaimlerChrysler AG*, 2004 WL 7351531, at *10 (D. Del. Jan. 28, 2004) ("The settlement negotiations occurred only after development of a thorough record, including extensive evaluation of the strengths and weaknesses of the case and the claim for damages. This factor cuts strongly in favor of the settlement.").  While the Parties did not engage in

extensive formal discovery, the information uncovered and reviewed by Class Counsel, including informal discovery produced via the mediation process and publicly available information, provided the information needed for Class Counsel to objectively evaluate the strengths and weaknesses of Plaintiff's and Settlement Class Members' claims.[3] Etzel Decl. ¶ 9.

### C. Plaintiffs Would Face Real Risks if the Case Proceeded

Although Plaintiffs believe their case is strong, it is not without risk. *See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 319 (3d. Cir 1998) ("The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."). Here, Plaintiffs and the putative Class face risks at every juncture, including: (1) Defendant's Rule 12(b)(1) motion; (2) Defendant's anticipated 23(f) petition should a class be certified; (3) Defendant's anticipated motion for summary judgment; (4) the Parties' competing motions to strike each other's experts; (5) trial; and (6) appeal. Each of these steps would pose significant risks to the Settlement Class Members that could result in them recovering nothing at all, and numerous similar actions have been dismissed or failed to achieve class certification. The proposed settlement eliminates these risks while providing relief that is fair, reasonable and adequate.

---

[3] The fact that the Parties have not yet completed full discovery is not determinative. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green v. Accolade, Inc.,* 2019 WL 316722, at *3 (E.D. Pa. Jan. 24, 2019) (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case"); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *9, n.4 (E.D. Pa. July 30, 2021) (stating that it "is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important *informal* discovery") (emphasis added).

### D.     Defendant's Ability to Withstand a Greater Judgment

"This *Girsh* factor addresses whether the defendant[] could withstand a judgment for an amount significantly greater than the Settlement."  *In Re DaimlerChrysler AG*, 2004 WL 7351531, at *13 (D. Del. Jan. 28, 2004) (internal quotation marks omitted).  The ability to withstand a greater judgment, is relevant if "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This factor is not dispositive, and courts apply a flexible standard as to how much weight it is given based on the unique circumstances of a given case.[4] When "the Court has not been presented with any reason to believe that [defendant] faces any financial instability . . . this [*Girsh*] factor is largely irrelevant for the purpose of resolving the instant motion." *Id.* at 254..

### E.     The Settlement is Fair, Reasonable and Adequate

"The last two *Girsh* factors evaluate [the] … reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin*, 391 F.3d at 538.  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 645-46 (E.D. Pa. Jan. 21, 2015) (quoting *In re Cendant Corp. Sec. Litig.*, 109 F.

---

[4] *See Reibstein*, 761 F. Supp. 2d at 254-55 ("[T]his factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow.")

Supp. 2d 235, 263 (D.N.J. 2000); *see also Lenahan v. Sears Roebuck & Co.*, 2006 WL 2085282, at *12, 15–16 (D.N.J. Jul. 24, 2006) (approving $15 million settlement when maximum exposure at trial may have been over $100 million because of the uncertainty of the final disposition at trial). "Rather, the recovery percentage 'must represent a material percentage recovery to plaintiff, in light of all the risks considered under *Girsh*.'" *Id.* at 646.

Here, the total settlement value is $625,000, and each Settlement Class Member is expected to receive direct payment. Given that data breach litigation is still an emerging area of law, the risk of continued litigation is significant, making the instant settlement, which provides relief to the class now—as opposed to after years of litigation without the guarantee of recovery—even more reasonable.

Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable. *See Glaberson v. Comcast Corporation*, 2015 WL 5582251, at *8 (E.D. Pa. Sept. 22, 2015) ("The Third Circuit has noted that after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.") (internal quotation marks omitted); *see also* Etzel Decl. ¶ 10. Moreover, this Circuit recognizes a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). In addition, this Settlement treats Settlement Class Members equitably because they will each be given an equal share of the common fund.

### F.    The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate

"Notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re National Football League Players Concussion Injury*

*Litig.*, 821 F.3d 410, 435 (3d Cir. 2016).  Class Counsel respectfully submits that the proposed

plan for notice is fair, reasonable, and adequate.  As recited in the Settlement and described

above, the proposed notice will inform Settlement Class Members of the Settlement's

substantive terms.  It will advise Settlement Class Members of their options for remaining part

of the Settlement Class or for opting out of the Settlement; for receiving their Settlement

Benefits; for objecting to the Settlement, Class Counsel's attorneys' fee application and/or

request for service awards to the named Plaintiffs; and how to obtain additional information

about the Settlement.  The proposed plan for notice is designed to directly reach a very high

percentage of Settlement Class Members, with consideration that Settlement Class Members'

contact information is readily available and maintained by Defendant. Etzel Decl. ¶¶ 12–13;

Peak Decl. ¶ 16 (estimating the proposed notice plan will reach 90–100% of the Class)

### G.    The Proposed Attorneys' Fees are Reasonable

Pursuant to the Settlement Agreement, Class Counsel will apply to the Court for a Fee

Award not to exceed one-third of the Settlement Fund.  Such a request for attorneys' fees is

reasonable in comparison to other common-fund settlements within the Third Circuit.  *See, e.g.*,

*Moon*, 2023 WL 1765565, at *3-4 ("As noted above, this settlement is the culmination of years

of litigation, multiple motions to dismiss, robust discovery, mediation, and extensive

negotiations. . . .  The one-third recovery is also unremarkable."); *Cullen v. Whitman Medical*

*Corp.*, 197 F.R.D. 136, 150 (E.D. PA. Oct. 3, 2000) (Approving one-third of the common fund

for attorneys' fees and noting "[a]s class counsel describe, the award of one-third of the fund for

attorneys' fees is consistent with fee awards in a number of recent decisions within this

district").

## V.    THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION

Certification of a settlement class is "a judicially crafted procedure" which permits the Court to certify a class "for settlement purposes only, not for litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) ("GM Trucks"). To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 487 (3d Cir. 2017); see also *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). The court may take the proposed settlement into consideration when evaluating whether these requirements are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

### A.    The Rule 23(a) Factors Are Met

Under Rule 23(a), a class action may be maintained where: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (citing Rule 23(a)).

Although it is not among Rule 23(a)'s expressly enumerated requirements, the Third Circuit has held that "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). The requirement that a class's membership be readily ascertainable facilitates administration of the class action and provision of the best practicable notice to the class, while also protecting the defendant by clearly identifying who is bound by a judgment. *Marcus*, 687 F.3d at 593. To

ensure these objectives, the Third Circuit has found that "[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id*. Here, since the Class is defined based upon objective criteria, their membership is readily ascertainable and has been ascertained directly from Defendant's records.

### 1. The Settlement Class is So Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Although there is no bright-line threshold, the Third Circuit has found that the existence of "more than 90 geographically dispersed Plaintiffs met the numerosity requirement of [Rule] 23(a)(1)." *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985); *see also Weiss v. York Hosp*., 745 F.2d 786, 808 (3d Cir. 1984) (affirming finding that class of 92 osteopaths was sufficiently numerous). In fact, a class of forty has been presumed to be numerous. *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of Plaintiff exceeds 40, the first prong of Rule 23(a) has been met")

Here, the class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class comprises 17,757 individuals. SA, § 1. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2. The Claims of the Settlement Class Raise Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." To satisfy Rule 23(a)(2), a certifiable class-wide claim "must depend upon a common contention," and that "[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011). The Supreme Court and the Third Circuit have long recognized that even one common question (so defined) may demonstrate commonality. *Id.* at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do . . ."); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 310 (3d Cir. 1998) ("*Prudential II*"). ("'The commonality requirement will be satisfied if the named Plaintiff share at least one question of fact or law with the grievances of the prospective class.'") (*quoting Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "Commonality" under Rule 23(a)(2) thus does not require that all class members have identical claims, and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56.

Plaintiffs' and Settlement Class members' claims raise common questions regarding whether Wabtec owed Plaintiffs and Class Members a duty to protect their PII, whether Wabtec acted negligently and breached its duty of care during the prelude to, commission of, and response to the Cyberattack, and the appropriate measure of damages for a data compromise involving these types of PII.

These common questions of law and/or fact have common Class-wide answers that would determine or drive the resolution of Plaintiffs' and proposed Settlement Class claims, and therefore readily satisfy Rule 23(a)(2)'s requirements.

### 3. Plaintiffs' Claims and Defenses are Typical of the Settlement Class

Rule 23(a)(3) requires that a representative plaintiffs' claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of

their own goals." *Prudential II*, 148 F.3d at 311 (citations omitted). Thus, "[t]o evaluate typicality, we ask whether the named plaintiff's claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the Plaintiff are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (citations omitted). Rule 23(a)(3) is satisfied where a named plaintiff can "show that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d at 809 n.36 (citation omitted). Thus, "factual variations will not defeat certification where the various claims arise from the same legal theory," unless there is a danger with respect to the named plaintiff that "the unique circumstances or legal theory will receive inordinate emphasis" so that the common claims "will not be pressed with equal vigor or will go unrepresented." *Id.*

The typicality requirement is met here. Plaintiffs' experiences were typical in respect to their interaction with Wabtec, as they were both employees of Wabtec whose information was implicated in the Cyberattack. FAC ¶¶ 8–11. Plaintiffs assert class claims based upon Wabtec's same actions or failures to act. Plaintiffs' common law claims under negligence, negligence per se, breach of implied contract, unjust enrichment, and declaratory relief are thus typical of the Class's claims.

### 4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." *Id.* The Third Circuit has held that the "adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel." *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982); *see also New Directions Treatment Serv's v. City of*

18

*Reading*, 490 F.3d 293, 313 (3d Cir. 2007) ("Rule 23(a)(4)'s requirement that a class representative fairly and adequately protect the interests of the class mainly seeks to uncover conflicts of interest between named parties and the class they seek to represent. A class representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard."). Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *see also Amchem Prods. Inc.*, 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Cyberattack. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for the same reimbursements with the receipt of a cash payment check as their pro-rata share of the Settlement Fund. SA, §§ 2.1, 2.3.

Plaintiffs' Proposed Order seeks the appointment of Jamisen A. Etzel of Lynch Carpenter LLP, and Marc E. Dann of DannLaw as Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3). Proposed Class Counsel has significant experience as vigorous class action litigators and are well suited to continue prosecuting the action, if necessary, or to supervise the administration of this Settlement if approved. Plaintiffs' attorneys are knowledgeable and experienced in this area of law as well as class actions and other complex litigation generally. Proposed Class Counsel Jamisen Etzel has more than ten years of experiencing focusing on data breach and privacy litigation and has been at the forefront in developing Pennsylvania caselaw in this field. *See* Etzel

Decl., ¶¶ 3–4.[5] Thus, the Court can readily conclude that Proposed Class Counsel satisfies the requirements of Rule 23(a) and (g).

### B.  The Settlement Class Satisfies Rule 23(b)(3).

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that: (i) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (ii) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. Inc.*, 521 U.S. at 618.

### 1.  Common Questions Predominate

The Plaintiffs satisfy the predominance requirement because questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to the Class Members. Most notably, all Plaintiffs and Settlement Class and Subclass Members were affected by the same Cyberattack and had their PII exposed to unauthorized third-party actors. Here, the same alleged course of conduct by Defendant's allegedly inadequate data security, which permitted the Cyberattack to occur, gives rise to all Settlement Class Members' claims. As set forth *supra*, there are numerous common issues relating to Defendant's liability at the core of this action, which predominate over any individual issues. Therefore, the predominance requirement of Rule 23(b)(3) is satisfied.

---

[5] Plaintiffs' Counsel will provide additional detail regarding their qualifications if requested by the Court to support this motion, and in event they will do so in connection with their eventual motion for final approval and application for an award of attorneys' fees.

### 2.  A Class Action is the Superior Method for Adjudication

Finally, certification of this Settlement as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. In this context, the district court must consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). For class certification to be appropriate, the court must conclude that a class action is "the best 'available method[] for the fair and efficient adjudication of the controversy.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 190 (3d Cir. 2001). The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Prudential II*, 148 F.3d at 316. The superiority requirement is easily satisfied here since there are a large number of class members with small damages stemming from the same course of conduct.

The Settlement Agreement and notice plan provide Settlement Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. SA, §§ 4, 5. The Settlement will also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against the Defendant, by going forward with this case as a class action. Additionally, because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. Finally, the complexity of the claims and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.

21

Since the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008).

Pursuant to the Settlement Agreement, the Defendants will provide the Settlement Administrator with the list of the names, last known physical addresses, and email addresses (if known) of all Settlement Class Members in its records. SA, § 3.3(a). The Settlement Administrator will then send the Short Notice (attached to the Settlement Agreement as Exhibit 1) to Settlement Class Members by U.S. mail or email within forty-five (45) days of the Preliminary Approval Order. SA, §§ 1.2, 3.3(d). In the event a Short Notice is returned to the Settlement Administrator by the USPS as undeliverable and the envelope contains a forwarding address, the Settlement Administrator shall resend the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. SA § 3.3(d)(iii).  In the event that subsequent to the first mailing of a Short Notice and at least fourteen (14) days prior to the Opt-Out Date and Objection Date a Short Notice is returned to the Settlement Administrator by the USPS as

undeliverable and the envelope does not contain a forwarding address, the Settlement Administrator shall perform a skip trace. *Id*. If the skip trace results in the discovery of an ascertainable address for the Claimant, the Settlement Administrator shall resend the Short Form Notice within seven (7) days of receiving such information. *Id.*

The Settlement Administrator will also establish a Settlement Website, to which Settlement Class Members may refer for information about the Settlement, submit inquiries, and view important settlement documents and deadlines.  SA, § 3.3(c).  The Parties have also agreed that the Notice substantially in the form of the Short Notice shall be published on or before the Notice Commencement Date in a general publication that reaches the entire United States, such as PR Newswire. SA § 3.3(e).

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines for objecting, and/or appearing at the Final Approval Hearing. *See* SA at Exhibits 1–2.

The proposed Settlement Administrator Verita has substantial experience implementing this type of notice plan in this type of case, and estimates that the proposed plan will reach 90 to 100% of the Settlement Class. Peak Decl. ¶¶ 5, 16. Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances.

## VII.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter an order substantially similar to the proposed Preliminary Approval Order, attached as Exhibit 3 to the Settlement Agreement.

Dated: August 23, 2024                    Respectfully Submitted,

/s/ *Jamisen A. Etzel*
Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
P: (412) 322-9243
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

Marc E. Dann*
Brian D. Flick*
DANNLAW
15000 Madison Ave.
Lakewood, OH 44107
P: (216) 373-0539
notices@dannlaw.com


*Admitted Pro Hac Vice

*Proposed Class Counsel for the Plaintiffs and Putative Class*


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Jamisen A. Etzel*
Jamisen A. Etzel

24