**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOKKY TJAHJONO and MILES BLACK, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-531-WSS |
| Plaintiffs, | |
| v. | |
| WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION, d/b/a WABTEC CORPORATION, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Summary of Plaintiffs' Allegations and Claims ................................................ 3

    B.  Procedural History and Negotiation of the Settlement ................................. 4

III. THE SETTLEMENT AGREEMENT ............................................................... 6

    A.  The Proposed Settlement Class ..................................................................... 6

    B.  Monetary Terms ............................................................................................. 6

    C.  Dismissal and Release of Claims ................................................................... 7

    D.  Results of Settlement Administration and Notice.......................................... 8

IV.  ARGUMENT .................................................................................................... 10

    A.  The Court Should Grant Final Approval to the Settlement. ........................ 10

        1. Rule 23(e)(2)(A): The Settlement Class Representatives and Class
           Counsel Adequately Represent the Settlement Class. ........................... 12

        2. Rule 23(e)(2)(B): This Settlement Is the Product of
           Arm's Length Negotiations.................................................................. 13

        3. Rule 23(e)(2)(C): The Relief Provided to the Settlement Class Is
           Adequate and Exceeds the Per Capita Relief Provided in Many
           Comparator Settlements....................................................................... 14

        4. Rule 23(e)(2)(D): The Settlement Treats Settlement Class
           Members Equitably............................................................................... 18

    B.  Certification of the Settlement Class Is Appropriate. ................................... 18

    C.  Notice to Class Members Was Adequate and Satisfies the
        Requirements of Rule 23 and Due Process.................................................. 22

V.   CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                          **<u>Page(s)</u>**

*Abubaker v. Dominion Dental USA, Inc.*,
    No. 119CV01050LMBMSN, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) .......................... 20

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 18, 20, 21, 22

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ................................................................................ 20

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ............................................................................... 14

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) .............................................................................. 22

*Callahan v. Commonwealth Land Title Ins. Co.*,
    1990 WL 168273 (E.D. Pa. Oct. 29, 1990) .......................................................... 12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................. 10

*Cullen v. Whitman Medical Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................ 16

*Daniel B. v. O'Bannon*,
    633 F. Supp. 919 (E.D. Pa. 1986) ..................................................................... 12

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .............................................................................. 10

*Fulton-Green v. Accolade, Inc.*,
    No. CV 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ................................... 20, 21, 22

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .......................................................................... 2, 10

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08-cv-6060-RMB-RLE, 2010 WL 2643307 (S.D.N.Y. Jun. 25, 2010) ......................... 15

*Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ........................................................................ 10, 14

*In re American Family Enterprises*,
    256 B.R. 377 (D.N.J. 2000) .............................................................................. 12

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ................................................................ 21

*In re Nat.'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) .......................................................... 14

*In re National Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) .......................................................... 13

*In re Pet Food Products Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ................................................................ 10

*In re Processed Egg Products Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) .......................................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ........................................................... 12

*In re Prudential Ins. Co.of Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................ 21

*In re Samsung Data Security Breach Litig.*,
    2025 WL 26688 (D.N.J. Jan. 3, 2025) ................................................. 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................... 10, 19, 20, 21

*In re Wawa, Inc. Data Sec. Litig.*,
    85 F.4th 712 (3d Cir. 2023) ................................................................. 17

*Lipuma v. American Express Company*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................... 15, 16

*McGowan v. Core Cashless, LLC*,
    2024 WL 488318 (W.D. Pa. Feb. 8, 2024) ........................................... 15

*Rivera v. Lebanon School Dist.*,
    No. 1:11-00147, 2013 WL 4498817 (M.D. Pa. Aug. 20, 2013) ............ 15

*Sala v. Nat'l R.R. Passenger Corp.*,
    721 F. Supp. 80 (E.D. Pa. 1989) .................................................... 14, 15

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................... 13

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ................................................................................................................ 19

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Hokky Tjahjono and Miles Black, on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the settlement reached in this Litigation, and for approval of the manner of distribution of the Settlement Fund. The terms of the settlement are set forth in the Settlement Agreement (or "Agreement"), previously filed at ECF 54-3 and attached as Exhibit A to the Joint Declaration of Class Counsel ("Jt. Counsel Decl.").[1]

## I.    <u>INTRODUCTION</u>

Plaintiffs alleged that on or around March 15, 2022, unauthorized actors introduced malware onto Defendant Westinghouse Air Brake Technologies Corporation's ("Wabtec") systems and accessed certain sensitive information about Plaintiffs and other similarly situated individuals that was stored on Defendant's network. On or around December 30, 2022, Defendant began sending notification letters to potentially impacted individuals. Ultimately, approximately 17,158[2] individuals' records were impacted. Defendant offered these individuals two years of free credit monitoring and identity theft restoration services. SA § I.

Plaintiffs commenced individual class action lawsuits alleging Defendant failed to sufficiently protect their Personal Information. They ultimately combined their actions and filed a First Amended Class Action Complaint ("FAC") with this Court on June 26, 2023. ECF No. 13.

After nearly a year of hard-fought litigation, the Parties agreed to a settlement that provides substantial monetary benefits to the Settlement Class. Specifically, the Settlement provides that

---

[1] The capitalized terms in this memorandum shall be construed according to their meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

[2] Defendant's data contained 17,757 records, but the Settlement Administrator determined that 599 of these were duplicates, leaving approximately 17,158 unique individuals in the impacted group. Declaration of Gio Santiago ("Santiago Decl."), ¶ 5.

Wabtec will pay monetary relief into a non-reversionary common fund in the amount of six hundred and twenty-five thousand dollars ($625,000). *See* SA § 2.1. In addition, the Settlement Fund will be used to pay for providing Notice to the Settlement Class, and the costs of Settlement Administration. *See* SA §§ 2.2, 3.3. The Settlement Fund will also be used to pay for attorneys' fees, costs, and expenses of Class Counsel, and Service Awards to the Class Representative. *See* SA §§ 2.2, 3.3, 7.2. The net settlement fund will be distributed equally to Settlement Class Members. SA § 2.3. If finally approved by the Court, the Settlement will result in entry of a Final Judgment Order that will terminate all pending claims in the Action. SA § 1.14.

As detailed *infra*, the Settlement represents a fair, reasonable, and adequate result for the Settlement Class and thus satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Third Circuit decisions of *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). The Agreement is especially beneficial to the Settlement Class considering the substantial litigation risks Plaintiffs faced. Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the settlement as they had conducted significant factual investigation into the merits of the claims, engaged in protracted settlement negotiations, and exchanged detailed information with Defendant as part of the settlement process. *See* Jt. Counsel Decl., ¶ 21.

Given the risks to proceeding with litigation and that the Agreement achieved a satisfactory resolution relative to the damages sustained, the $625,000 Settlement Fund and the proposed distribution are fair, reasonable, and adequate in all aspects. Accordingly, Plaintiffs respectfully request the Court grant final approval of the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of Plaintiffs' Allegations and Claims[3]

Defendant Wabtec employs over 27,000 employees in over 50 countries around the world. FAC ¶ 19. During individuals' course of employment with Wabtec, Defendant receives, creates, and handles Personal Information such as full names, dates of birth, a variety of governmental identification numbers, medical and health insurance information, photographs, demographic information, salaries, and numerous other points of data. FAC ¶ 20.

On or about December 30, 2022, Wabtec announced that it had been the subject of a ransomware attack that impacted sensitive information contained on the affected computer systems. FAC ¶ 63. According to the notice letters Defendant sent to Plaintiffs and the Class, Wabtec detected unusual activity on its network on June 26, 2022, leading to an investigation of the attack and whether the hackers had exfiltrated any data. FAC ¶ 54. Wabtec subsequently discovered that on or about March 15, 2022, cybercriminals had introduced malware into certain Wabtec systems. FAC ¶ 56. On or about November 23, 2022, Wabtec concluded its investigation and determined that certain systems containing personal information were subject to unauthorized access. FAC ¶ 57. Wabtec further determined that personal information contained in the impacted systems was exfiltrated by cybercriminals. *Id.* The information impacted by the Cyberattack included a wide swath of Personal Information, including individuals' full names; dates of birth; non-US national ID numbers; non-US social insurance numbers or fiscal codes; passport numbers; IP addresses; Employer Identification Numbers; USCIS or Alien Registration Numbers; medical

---

[3] This summary is drawn from the Plaintiffs' allegations in the FAC and is provided only for purposes of informing the Court about the allegations and claims at issue. Wabtec denies any and all allegations of wrongdoing, liability, and inadequate security, and disclaims all liability relating to and arising out of the Litigation and the Cyberattack. SA § III.

records and health insurance information; photographs; gender and gender identity; salary; Social Security Numbers; financial account information; payment card information; account usernames and passwords; biometric information; race and ethnicity; criminal convictions and offenses; sexual orientation; religious beliefs; and union affiliation. FAC ¶ 58.

Both Plaintiffs filed a class action lawsuit against Defendant, asserting claims for relief emanating from the Cyberattack. These class action lawsuits were combined before this Court by way of a First Amended Class Action Complaint under the first-filed case *Hokky Tjahjono v. Westinghouse Air Brake Technologies Corporation d/b/a Wabtec Corporation*, Case No. 2:23-cv-00531-WSS. Plaintiffs, through the FAC, alleged causes of action against Defendant for: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; and (vi) declaratory relief. *See, e.g. generally*, FAC ¶¶ 94–137.

### B.  Procedural History and Negotiation of the Settlement

Wabtec moved to dismiss on July 17, 2023. (ECF No. 23). The Parties agreed to explore a possible resolution and requested a stay, which the Court granted on August 16, 2023. (ECF Nos. 28–29). Thereafter, the Parties exchanged certain materials subject to Rule 408. The Parties conducted a full-day mediation before Bruce A. Friedman, Esq. of JAMS on November 20, 2023. Jt. Counsel Decl. ¶ 9. Although some progress was made toward resolution at that initial mediation, the Parties did not reach a resolution, and thus requested that the Court lift the stay. *Id.*, ECF Nos. 32–33.

The Parties completed briefing on Wabtec's 12(b)(6) Motion to Dismiss, which the Court granted in part and denied in part on March 26, 2024 (ECF No. 39). Wabtec answered the Amended Complaint on April 9, 2024 (ECF No. 40) and filed a Motion to Dismiss under Rule 12(b)(1) on April 25, 2024 (ECF No. 42). At the Rule 16 Conference on May 15, 2024, the Court deferred

merits discovery and granted the Parties limited jurisdictional discovery to be completed by June 30, 2024, related to Article III standing (ECF No. 49). The Court also inquired with the Parties about opportunities for alternative dispute resolution, consistent with the Court's Local Rules and practices.

The Parties then initiated limited discovery, with Plaintiffs serving written discovery requests and seeking witness availability from Wabtec for depositions. Jt. Counsel Decl. ¶ 11–12. The Parties also resumed negotiations regarding a potential resolution of this Action, and conducted a supplemental mediation with Bruce A. Friedman, Esq. of JAMS on June 7, 2024. Jt. Counsel Decl. ¶ 13. At that supplemental mediation, with the assistance of Mr. Friedman, the Parties succeeded in reaching an agreement in principle to resolve this Action on a class wide basis, and shortly thereafter executed a confidential term sheet. *Id.*

The Parties informed the Court of their impending settlement on June 12, 2024, and requested an additional stay to permit them time to draft and finalize a comprehensive agreement and notice plan. (ECF No. 50). Plaintiffs moved for preliminary approval of the proposed Settlement, which the Court granted in its Order Granting Plaintiffs' Unopposed Motion to Preliminarily Approve Class Action Settlement. (ECF No. 57). In its Order, the Court: (1) preliminarily approved the Settlement as fair, reasonable, and adequate; (2) conditionally certified the Settlement Class; (3) appointed Class Counsel and Plaintiffs as Class Representatives; and (4) approved the Notice and notice plan; and (5) scheduled a Final Approval Hearing for January 21, 2025 at 10:30 AM. *Id.*

In the time since the Preliminary Approval Order, the Settlement Administrator carried out the proposed notice plan, the results of which are described in Section III.D, below. Further, Class

Counsel moved for an award of attorneys' fees, litigation expense reimbursement, and service awards on November 12, 2024. ECF Nos. 58–59.

## III.    THE SETTLEMENT AGREEMENT

### A.    The Proposed Settlement Class

The proposed Settlement Class that received preliminary certification for settlement purposes is defined as follows:

> All Persons residing within the United States whose Personal Information was potentially compromised in the Cyberattack, beginning on or around March 15, 2022, during which unauthorized actors introduced malware onto the systems of Westinghouse Air Brake Technologies Corp. d/b/a Wabtec Corp.

ECF No. 57, ¶¶ 7, 1.10, 1.36. The Settlement Class specifically excludes: (i) Defendant and its respective officers and directors (ii) the Judge(s) to whom the action is assigned and any member of the Judge's staffs or immediate family members; and (iii) any other Person found by a court of competent jurisdiction to be a guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Cyberattack or who pleads nolo contendere to any such charge. SA § 1.36. As of the opt out and objection deadlines, and as of the date of this motion, no Settlement Class Members have objected to the Settlement, and only six Settlement Class Members have requested exclusion from the Settlement Class. *See* Santiago Decl. ¶¶ 11–12 & Ex. E; Jt. Counsel Decl. ¶ 18.

### B.    Monetary Terms

The proposed Settlement Fund is $625,000. SA § 1.28. Upon final approval, and within fifteen (15) days after the Effective Date, Defendant will establish the Settlement Fund by causing the Settlement Payment of $625,000 to be advanced to the Settlement Administrator, less any amounts caused by Defendant to be paid to the Settlement Administrator for Costs of Settlement Administration prior to the Effective Date. SA § 2.1. In accordance with the Settlement

Agreement, the Settlement Administrator shall make deductions from the Settlement Fund for court-approved Attorneys' Fees and Expenses Award, Service Awards, the Cost of Settlement Administration, and CAFA Notice. SA § 2.3. The Settlement Administrator shall distribute the remaining funds in the Settlement Fund equally per capita to each Settlement Class Member. *Id.*

Checks will be distributed via mail, and Settlement Class Members will have one hundred eighty (180) days to cash their respective checks. SA § 2.3. If any amount remains in the Settlement Fund after all issued checks have become void, the Settlement Administrator will make a second distribution of those funds in equal amounts to all Settlement Class Members who redeemed or cashed their initial payments. *Id.* If, however, the residual amount in the Settlement Fund is insufficient to permit a second payment amount of at least $5 to all such Settlement Class Members, then the Settlement Administrator will make a *cy pres* payment by donating all remaining funds to the Carnegie Science Center. *Id.*

### C.    Dismissal and Release of Claims

Upon the Effective Date, each Settlement Class Member shall be deemed to have forever released any and all past, present, and future claims (including Unknown Claims), administrative claims, actual and potential causes of action, demands, damages, debts, liabilities of any nature, remedies, proceedings, actions, suits, allegations, decrees, judgments, duties, obligations, losses, rights, matters, issues, assertions of wrongdoing, any demand for injunctive relief or any other type of equitable or legal relief, and controversies of any kind, whether class, individual, or otherwise in nature, including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, whether known or unknown, suspected or unsuspected, asserted or unasserted, discovered or undiscovered, liquidated or unliquidated, accrued or

unaccrued, fixed or contingent, direct or derivative, concealed, or hidden, and any other form of legal or equitable relief that was asserted at any time before the Effective Date, could have been asserted at any point before the Effective Date, or could be asserted at any point on or after the Effective Date by any Releasing Person with respect to any Released Person arising out of or relating to the Cyberattack, including without limitation all such claims that arise out of or relate to any of the facts, acts, omissions, transactions, and occurrences that have been alleged or could have been alleged in the Litigation in relation to any Released Person. Released Claims shall not include the right of any Releasing Person or any Released Person to enforce the terms of the Settlement Agreement, and shall not include the claims of individuals who have timely and validly opted out of the Settlement Class.

### D.    Results of Settlement Administration and Notice

Following the Court's Preliminary Approval Order, the Settlement Administrator completed the Notice plan the parties proposed in the Settlement. *See generally* Santiago Decl. ¶¶ 2–10. The Notice plan was designed to reach as many Settlement Class Members as practicable. The Notice included the required description of the material Settlement terms; the deadline for Settlement Class Members to opt-out of the Settlement Class; the deadline for Settlement Class Members to object to the Settlement; and the Settlement Website at which Settlement Class Members could access the Long Form Notice, Settlement Agreement, and other related documents and information. Santiago Decl., ¶¶ 6–9 & Ex. C. The Settlement Administrator also complied with the requirements of the Class Action Fairness Act by sending the proposed Settlement and other case documents to 54 government officials. *Id.* at ¶¶ 2–3 & Ex. A.

Pursuant to the Court's Preliminary Approval Order, the Defendant provided a class list to the Settlement Administrator with the last-known names, addresses, and emails (if any) of the

Settlement Class Members. SA, § 3.3(a). After deduplication, the class list contained information for 17,158 Settlement Class Members. *See* Santiago Decl., ¶¶ 5–6. After identifying and removing the duplicate records, the Settlement Administrator processed the names and addresses through the United States Postal Service's National Change of Address database. *Id.* at ¶ 5. Thereafter, on September 25, 2024, the Settlement Administrator sent the Postcard Notice to 17,158 Settlement Class Members. Santiago Decl., ¶ 6 & Ex. C. Of those mailings, the Settlement Administrator received 1,898 notices returned by the USPS with undeliverable addresses. *Id.* ¶ 7. Through credit bureau and/or other public source databases, the Settlement Administrator performed address searches and was able to find updated addresses for 543 Class Members, to whom the Administrator promptly re-mailed the Notices. *Id.*

In addition to the mail program referenced above, the Settlement Administrator published on September 25, 2024 a press release nationally via PR Newswire's national Newsline, including syndicated distribution via AP News. Santiago Decl. ¶ 8 & Ex. D. The Settlement Administrator created a dedicated website for the settlement at www.paclassaction.com, where Class Members could review case documents including the Settlement Agreement and Long Form Notice, and elect to receive their settlement proceeds through electronic forms of payment. Santiago Decl. at ¶ 9. As of January 8, 2025, the website has received 2,477 visits. *Id.* Finally the administrator opened a toll-free telephone number Settlement Class Members could call to obtain information about the Settlement or request a Notice Packet, which as of January 8, 2025 has received 90 incoming calls. *Id.* at ¶ 10.

The deadline for Settlement Class Members to submit an objection or opt out of the Settlement was November 25, 2024. To date, there have been no objections, and only six

Settlement Class Members have submitted requests for exclusion. Santiago Decl. ¶¶ 11–12; Jt. Counsel Decl. ¶ 18.

## IV.   <u>ARGUMENT</u>

### A.   The Court Should Grant Final Approval to the Settlement.

Under Rule 23, a settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit's traditional nine-factor class settlement fairness and reasonableness standard, as originally articulated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), is:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. (alterations omitted) (*quoting City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)); *In re Pet Food Products Liab. Litig*., 629 F.3d 333, 350 (3d Cir. 2010). The Court must make findings regarding the *Girsh* factors where appropriate. *In re Pet Food*, 629 F.3d at 350.

"The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *Id*. (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 785 (3d Cir. 1995)). Further, the Third Circuit has reaffirmed the "overriding public interest in settling class action litigation." *In re Pet Food Products*, 629 F.3d at 351 (*quoting In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (noting the "especially strong" presumption in favor of voluntary settlements in "'class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation.'"). The 2018 amendments to Rule 23(e) also formalize a list of core considerations for settlement approval which overlap with the *Girsh*

factors such as: (1) whether class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The relevant *Girsh* factors support Final Approval. Plaintiffs structure the arguments below to track the elements specified in Rule 23(e)(2), and in doing so establish that the considerations in *Girsh* are met. The Class Representatives and Class Counsel adequately represent the Settlement Class. The Settlement was reached through well-informed, arm's length negotiations by competent and experienced counsel with an experienced mediator's assistance. *See* Jt. Counsel Decl., ¶¶ 9, 13, 19–22. The Settlement is reasonable and provides excellent relief for the Settlement Class. A review of the fairness, adequacy, and reasonableness factors demonstrates the Settlement fits well within the range of reasonableness, such that Final Approval is warranted. Finally, all Settlement Class Members are treated equitably relative to each other.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this Litigation proceeded to trial. Defendant argues that Plaintiffs' claims are unfounded, denies any potential liability, and up to the point of settlement here, has indicated a willingness to litigate those claims vigorously. The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

**1.     Rule 23(e)(2)(A): The Settlement Class Representatives and Class Counsel Adequately Represent the Settlement Class.**

Plaintiffs' interests are coextensive with, and not antagonistic to, the Settlement Class's interests, because Plaintiffs and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel. Class Counsel possess extensive experience in prosecuting class actions, including cases involving data breaches, in courts throughout the United States. *See* ECF No. 58-1 at ¶¶ 36–37; ECF Nos. 58-2, 58-3 (Class Counsel's resumes). Class Counsel devoted substantial time and resources investigating and prosecuting this Litigation, and they have and will continue to vigorously protect the Settlement Class's interests. Jt. Counsel Decl. ¶ 23.

As a result of arm's length and good faith negotiations, the Parties reached a Settlement that Class Counsel believes, based on extensive experience litigating similar class actions like this one, to be fair, reasonable, and in the Settlement Class Members' best interests. *Id.* ¶ 21. Class Counsel's assessment is entitled to considerable deference. *See e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998).[4] "Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re American Family Enterprises*, 256 B.R. 377, 421

---

[4] *See also Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at *16 (E.D. Pa. Oct. 29, 1990) ("a court should refrain from merely substituting its own judgment of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses"); *Daniel B. v. O'Bannon*, 633 F. Supp. 919, 926 (E.D. Pa. 1986) ("the professional judgment of counsel involved in the litigation is entitled to significant weight"). Recommendations of experienced counsel are entitled to great weight in evaluating a proposed class action settlement.

(D.N.J. 2000); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010).

### 2.    Rule 23(e)(2)(B): This Settlement Is the Product of Arm's Length Negotiations.

The Settlement is the result of intensive, arm's length negotiations between experienced attorneys, aided by a well-respected mediator (Bruce Friedman, Esq.), who are familiar with class action litigation and with the Litigation's legal and factual issues. An independent neutral's participation in negotiating a class action settlement is considered when evaluating arm's length negotiations. *In re National Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198-9 (E.D. Pa. 2014). The negotiations took place over the course of two mediation sessions, and resulted in an agreement after the initiation of discovery, and multiple discussions and information exchanges between the Parties. Jt. Counsel Decl. ¶ 9, 11–13.

In negotiating this Settlement in particular, Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims and Wabtec's defenses having the benefit of years of experience in litigating data breach class actions across the country involving similar claims. *See* Class Counsel's resumes, ECF Nos. 58-2, 58-3. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and initiated jurisdictional discovery. Jt. Counsel Decl. ¶ 13, 21. Defendant's filings and disclosures concerning the scope of the Cyberattack enabled an understanding of the key legal and factual issues as well as the potential scope of damages, and prepared Class Counsel for well-informed settlement negotiations at mediation. Jt. Counsel Decl. ¶ 21.

**3.      Rule 23(e)(2)(C): The Relief Provided to the Settlement Class Is Adequate
and Exceeds the Per Capita Relief Provided in Many Comparator
Settlements.**

Review of the Rule 23(e)(2)(C) factors (and in conjunction *Girsh* factors 4–6 and 8–9)

supports a determination that this Settlement is fair, adequate, and reasonable. Undoubtedly this

Settlement is a fair and reasonable recovery for the Settlement Class in light of Wabtec's defenses

and the challenging and unpredictable litigation path Plaintiffs would have faced absent a

settlement.

On this point, the reaction of the class to the settlement "is perhaps the most significant

factor to be weighed in considering its adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp.

80, 83 (E.D. Pa. 1989). Here, "the reaction of the Class to the Settlement weighs in favor of

approving the Settlement." *In re Nat.'l Football League Players' Concussion Injury Litig.*, 307

F.R.D. 351, 389 (E.D. Pa. 2015), *amended sub nom. In re Nat'l Football League Players'

Concussion Injury Litig.*, 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015). The

deadline for Settlement Class Members to respond has now passed, and the Settlement

Administrator has received only 6 opt-out requests and no objections. Santiago Decl. ¶¶ 11–12.

The complete lack of objections and *de minimis* opt-outs relative to the size of the

Settlement Class, consisting of approximately 17,152 members (after exclusions), strongly

supports final approval:

> In an effort to measure the class's own reaction to the settlement's terms directly,
> courts look to the number and vociferousness of the objectors." *Gen. Motors*, 55
> F.3d at 812. Considering this factor from a somewhat different angle, the Third
> Circuit Court of Appeals has recognized the practical conclusion that it is generally
> appropriate to assume that "silence constitutes tacit consent to the agreement" in
> the class settlement context. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15
> (3d Cir.1993). By using these considerations as a gauge of class reaction to the
> Moark Settlement, the Court determines that the class reaction here favors
> settlement. Indeed, there were no objections filed to the Settlement and thus no
> negative feedback to the settlement.

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 269 (E.D. Pa. 2012). As such, the

"utter absence of objections from the class . . . militates strongly in favor of approval of the settlement." *Sala*, 721 F. Supp. at 83.

Plaintiffs and Class Counsel are confident in the strength of their case, but they are also pragmatic in their awareness of the various defenses available to Wabtec, and the risks inherent to litigation. Jt. Counsel Decl. ¶ 24. The risks of establishing liability and damages are significant in all data security cases, but particularly in cases involving facts such as these. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *In re Samsung Data Security Breach Litig.*, 2025 WL 26688, at *12 (D.N.J. Jan. 3, 2025) (dismissing data breach class action for lack of standing); *McGowan v. Core Cashless, LLC*, 2024 WL 488318, at *4 (W.D. Pa. Feb. 8, 2024) (similar); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. Jun. 25, 2010) (collecting data breach cases dismissed at the federal level at the Rule 12(b)(6) or Rule 56 stages). Establishing liability and damages at trial would require multiple experts' extensive work and testimony. In addition, Defendant could present defenses it believes could bar recovery and oppose certification of a litigation class. The risks of continued litigation here are at the highest level and there is a genuine possibility that Plaintiffs could have failed to establish liability, class certification, and damages throughout summary judgment and trial.

Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *See Rivera v. Lebanon School Dist.*, No. 1:11-00147, 2013 WL 4498817 (M.D. Pa. Aug. 20, 2013) (noting appeal "could have delayed reimbursement to class members, as well as jeopardized their eventual recovery"); *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery

"strongly favor[s]" settlement approval). This Settlement provides substantial relief to the Settlement Class without further delay.

Courts recognize that settlements may be reasonable even where class members recover only part of their actual losses. *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) ("Even if the proposed settlement only amounts to 'a fraction of the potential recovery,' it does not necessarily follow that the settlement 'is grossly inadequate and should be disapproved.'"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Here, the gross settlement amount of $625,000 represents a gross recovery per class member of approximately $36.42. After deducting Class Counsel's requested attorney fees, expenses, the requested service awards to the Class Representatives, and the projected final costs of administration (*see* Santiago Decl. at ¶ 13), a net fund of approximately $298,710.24 should remain, allowing for net distributions of approximately $17.42 per Settlement Class Member.

This per capita recovery—on both a gross and net basis—is much more than the recovery provided in many recent settlements in the data breach arena. *See, e.g.*, *Bickham v. ReproSource Fertility Services, Inc.*, Case No. 1:21-cv-11879 (D. Mass.) (final approval granted July 25, 2024) (settlement fund valued at approximately $5.48 per class member; but distribution was claims-made only, allowing class members to file claims for out-of-pocket losses up to $3,000, credit monitoring services for three years, or a cash payment of $50; while non-claiming class members received no recovery); *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Aug. 15, 2023) (order granting final approval where the gross recovery per class member was approximately $3.83); *Davidson et al. v. Healthgrades Operating Company, Inc.*, No. 21-cv-01250-RBJ (D. Col. 2022) ($500,000 settlement reached after data breach affected 35,453 patients); *Phelps, et al. v.*

*Toyotetsu North America*, No. 6:22-cv-00106-CHB-HAI (E.D. Ky., Oct. 25, 2023) ($400,000 settlement reached after data breach affected 12,453 class members); *Christiansen, et al. v. Parker Hannifin Corporation*, No. 1:22-cv-00835-DAP (S.D. Ohio, August 2, 2023) ($1,750,000 settlement reached after data breach affected 115,539 consumers); *Summers v. Sea Mar Comm. Health Centers*, No. 22-2-0073-7 SEA (Super. Ct. Wash.) ($4,400,000 settlement for 1.2 million class members); *Owens v. U.S. Radiology Specialists, Inc.*, et al., No. 22 CVS 17797 (Mecklenburg Cty., NC) ($5,050,000 settlement for 1.3 million class members); *In re Wright & Filippis, LLC Data Sec. Breach*, No. 2:22-cv-12908-SFC (E.D. Mich.) ($2,900,000 for 877,584 class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17- md2807 (N.D. Ohio) ($4,325,000 settlement for 1.5 million class members); *In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ($0.17 per class member).

Notably, the Settlement is all cash, non-reversionary, and will provide automatic distribution to Class Members, meaning that they are not required to submit claim forms to obtain relief. Again, this compares favorably to numerous recent data breach settlements in which class member relief was only available on a claims-made basis, or in non-cash forms. *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-06019, ECF No. 181 (E.D. Pa.) (requiring proof of actual or attempted fraud for $15 gift card, or proof of out-of-pocket losses for up to $500), *attorney fee award vacated*, 85 F.4th 712 (3d Cir. 2023); *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-md-02807-JSG, ECF No. 144-2 (N.D. Ohio Dec. 14, 2018) ($10 payment with proof of purchase or $40 payment with proof of fraudulent charges); *Bray v. Gamestop Corp.*, No. 17-cv-

01365-JEJ, ECF No. 40-1 (D. Del. July 16, 2018) ($15 per hour, up to three hours, for documented time and effort and $22 with proof of fraudulent charges).

Courts also consider whether there are additional agreements between the Parties outside of the settlement that could cast doubt on the fairness or adequacy of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Settlement here contains the Parties' entire agreement on and understanding of the subject-matter at issue in the Action, other than a provision in the parties' initial term sheet regarding the number of opt-out requests required to trigger Defendant's right to terminate the Agreement. That threshold was not reached in this case. Jt. Counsel Decl., ¶ 25.

### 4. Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably.

Since all Settlement Class Members will receive equal payments pursuant to the Settlement Agreement, this assures that all Settlement Class Members will be treated equitably. The distribution formula reflects that there are no subclasses, and no relevant differences between Settlement Class Members. *See* SA §§ 1.36, 2.3.

### B. Certification of the Settlement Class Is Appropriate.

The Court conditionally certified the Settlement Class at Preliminary Approval. (ECF No. 57). There is no reason to deviate from that ruling, and Plaintiffs respectfully request that the Court finally certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For purposes of this Settlement, Wabtec does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(a)(1) numerosity is easily satisfied because the Settlement Class consists of approximately 17,152 individuals whose information was impacted as a result of the Cyberattack (accounting for the six exclusions), and joinder of all such persons is impracticable. Santiago Decl. ¶ 6. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceed 40, the first prong of Rule 23(a) has been met.").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The Third Circuit has held "commonality" may be satisfied by *one* common issue. *In re Warfarin*, 391 F.3d at 527. Here, Rule 23(a)(2)'s commonality requirement is readily satisfied. There are common questions of law and fact which not only exist, but predominate through the Settlement Class, such as whether Defendant owed a duty and/or breached its duty to safeguard the Personal Information of Plaintiffs and Settlement

Class Members through its actions and omissions leading up to and during Cyberattack. *See, e.g.,*
*Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *3
(E.D. Va. Nov. 19, 2021); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at
*4 (E.D. Pa. Sept. 24, 2019). Since this question of law and fact is common to all the Settlement
Class Members, and would also generate common answers driving the resolution of the case, the
commonality requirement is met.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of absent
Settlement Class Members, such that Rule 23(a)(3)'s typicality requirement is satisfied. The
typicality inquiry, a low threshold, is "intended to assess whether the action can be efficiently
maintained as a class and whether the named plaintiffs have incentives that align with those of
absent class members so as to assure that the absentees' interests will be fairly represented." *Baby
Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Typicality is satisfied where the class representative's
claim arises from the same alleged wrongful conduct by the defendant. *In re Warfarin*, 391 F.3d at
532. Plaintiffs and the Settlement Class were subjected to the same Cyberattack, received
Defendant's breach notifications, and claim to have suffered from the same forms of injuries, and
they will benefit equally from the Settlement relief. *Id.* at 531 ("The typicality requirement is
'designed to align the interests of the class and the class representatives so that the latter will work
to the benefit of the entire class through the pursuit of their own goals.'"); *Dominion Dental*, 2021
WL 6750844, at *3 (finding typicality satisfied where "Representative Plaintiffs, [and] other
Settlement Class members were subject to the alleged data breach and have suffered the same
types of injuries."). Plaintiffs and Class Counsel satisfy Rule 23(a)(4) adequacy of representation,
which "serves to uncover conflicts of the interest between named parties and the class they seek
to represent." *Amchem Products, Inc.*, 521 U.S. at 594. Adequacy is assessed by a two-prong test:

(1) class counsel's qualifications and (2) whether there are conflicts of interest between the named plaintiff and the class. *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Both these components are satisfied, and the appointments should be confirmed for Hokky Tjahjono and Miles Black as the Settlement Class Representatives, and Jamisen A. Etzel of Lynch Carpenter LLP and Marc E. Dann of DannLaw as Class Counsel. Class Counsel have worked to identify and investigate the claims, have the requisite experience in data breach class actions, know the applicable law, and have the resources committed to represent the Settlement Class. Fed. R. Civ. P. 23(g). *See also* Jt. Counsel Decl. ¶¶ 21, 22.

Rule 23(b)(3) certification of the Settlement Class is further proper because the predominance and superiority elements are readily met. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (quoting *Amchem Products, Inc.*, 521 U.S. at 623-24). Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3), Advisory Committee's Note to 1966 Amendment. Here, liability questions common to all Settlement Class Members substantially outweigh any possible individual issues affecting a Settlement Class Member. All of the harm in this case arises from the same Cyberattack, which materially impacted and harmed each Settlement Class Member and their Personal Information under the same circumstances. *See Fulton-Green*, 2019 WL 4677954, at *6 ("Because Accolade's role in the data breach is at the heart of all of the plaintiffs' claims, the plaintiffs have met their burden to show predominance for the purposes of conditional class certification.").

Superiority "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391

F.3d at 533–34 (internal quotation marks omitted). Rule 23(b)(3) identifies four superiority factors, the last of which is manageability, a matter of no concern with a settlement because there will be no trial. *Amchem Products, Inc.*, 521 U.S. at 620. The remaining superiority factors are satisfied here because (1) the individuals impacted have not shown an interest in controlling the prosecution of their claims, this being the only case to address the Cyberattack; (2) the claims are almost all identical as they stem from the same underlying incident; and (3) it is desirable to concentrate the litigation of these relatively small value individual claims in a single proceeding. *See*. *See Fulton-Green*, 2019 WL 4677954, at *6.

Finally, the Third Circuit's ascertainability requirement, which requires a showing that the class is defined based on objective criteria, and that there is a reliable and administratively feasible mechanism to confirm that Settlement Class Members fall within the class definition, is definitely met in this Litigation. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The Settlement Class Members are identifiable because Wabtec's systems allowed it to determine which individuals' PII was potentially impacted by the Cyberattack, and that information could also be used to facilitate the breach notifications and  direct notice of the Settlement to the Settlement Class Members. Santiago Decl. ¶ 5.

For these reasons, the Court should finally certify the Settlement Class.

### C.  Notice to Class Members Was Adequate and Satisfies the Requirements of Rule 23 and Due Process.

The Notice Plan approved by this Court and carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Due process and Rule 23 require that Settlement Class Members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The

mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standards imposed by due process.

Here, as detailed in Section III.D above, following the Court's approval of the notice plan, the Settlement Administrator sent direct mail Postcard Notice to the best available addresses for each Class Member after utilizing the NCOA database and additional resources, such as credit bureaus, to locate Class Members whose addresses have changed since Defendant's records were last updated. These efforts allowed notices to reach approximately 15,803 valid addresses, an amount equal to roughly 92.1% of the Settlement Class size. As additional measures, the notice plan included a press release on a national newswire, the settlement website, and a toll-free number.

The notice forms, press release, and website included important information about the Settlement, including how to opt-out or object, the proposed relief, and how to contact Class Counsel. Santiago Decl. ¶¶ 6–9 and Exs. C, D.  As required by Rule 23(e), the Notice generally described the Settlement in sufficient detail to alert Settlement Class Members to come forward to be heard, and contained all of the critical information required to apprise Settlement Class Members of their rights. *Id*. Thus, the notice plan is adequate and provides sufficient detail to allow Settlement Class Members with adverse viewpoints to come forward and be heard.

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm."  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).[5] Here, based on the high successful delivery rate of the Postcard Notices and

---

[5] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

the additional publication notice, it is probable that significantly more than 70% of the Settlement Class received actual notice. The Notice to the Settlement Class here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements.

## V.    <u>CONCLUSION</u>

The $625,000 Settlement obtained by Plaintiffs and Class Counsel represents an excellent recovery for the Settlement Class, particularly in light of the significant litigation risks the Settlement Class faces, including the very real risk of the Settlement Class receiving no recovery at all. For the foregoing reason, Plaintiffs respectfully request that the Court finally approve the proposed Settlement and the proposed manner of distribution of the Settlement Fund as fair, reasonable, and adequate.

Dated: January 10, 2025                    Respectfully Submitted,

*/s/ Jamisen A. Etzel*
Gary F. Lynch
Jamisen A. Etzel
Nicholas A. Colella
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
P: (412) 322-9243
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

Marc E. Dann*
Brian D. Flick*
DANNLAW
15000 Madison Ave.
Lakewood, OH 44107
P: (216) 373-0539
notices@dannlaw.com

*Admitted Pro Hac Vice

*Proposed Class Counsel for the Plaintiffs and Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel